327 F.3d 208
 UNITED STATES of America, Appellee,
v.
Robert A. LINO, also known as Robert L. Little, James S. Labate, also known as "Jimmy," Frank A. Persico, also known as "Frankie," Anthony A. Stropoli, Cary F. Cimino, Sebastian Rametta, also known as "Sebbie," James F. Chickara, Ralph Dematteo, Robert P. Gallo, also known as "Bobby," Michael T. Grecco, John M. Black, Jr., Angelo Anthony Calvello, also known as "Jamaican Tony," Joseph A. Mann, also known as "Elizabeth Andy," William M. Stephens, also known as "Bill," Glenn B. Laken, Gene E. Phillips, A. Cal Rossi, William F. Palla, Todd M. Nejaime, Steven J. D'Apuzzo, also known as Steven J. Dapuzzo, Defendants,
Vincent G. Langella, also known as "Vinny," Defendant-Appellant.
 Docket No. 01-1344.
 United States Court of Appeals, Second Circuit.
 Argued: January 17, 2003.
 Decided: April 24, 2003.
 Amended: April 25, 2003.
 
 Roy R. Kulcsar (Steven Z. Legon, on the brief) New York, NY, for Defendant-Appellant.
 James B. Comey, United States District Attorney for the Southern District of New York (David C. Esseks and Celeste L. Koeleveld, on the brief), New York, NY, for Appellee.
 Before: LEVAL and CABRANES, Circuit Judges, and BERMAN, District Judge*.
 LEVAL, Circuit Judge.
 
 
 1
 Vincent G. Langella pled guilty in the United States District Court for the Southern District of New York (Pauley, J.) to one count of racketeering and one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(c) and (d). On July 3, 2001, Judge Pauley sentenced him to 27 months in prison and a subsequent three-year term of supervised release. The court also issued a joint and several order of restitution requiring Langella and his co-defendants to restore $1,587,947.27 to their victims. The court ordered Langella to pay a share of any earnings from prison work programs and, during his three-year term of supervised release, 10% of his gross income each month.
 
 
 2
 In this appeal, Langella claims that the district court did not consider his financial circumstances in setting his restitution payment schedule, as required by former 18 U.S.C. § 3664(a).[1] Accordingly, he asks us to vacate the restitution order. We find his argument to be without merit. We therefore affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 Langella was part of a group of stock brokers engaged in a fraudulent scheme to inflate the prices of selected stocks. The brokers moved from firm to firm, recommending that customers purchase the selected stocks and discouraging them from selling. In the transactions charged in the indictment, Langella helped to manipulate sales of stock in two companies in exchange for secret, elevated commissions, which he knew to be illegal. After the conspiracy was broken up, Langella entered into a negotiated plea agreement and pled guilty on February 16, 2001. At his sentencing hearing, Judge Pauley said:
 
 
 4
 In considering your ability to pay I am convinced that you have an ability in the future to make some contribution toward this restitution. You are unmarried. You have no children. You have no dependents, and hopefully you are going to find something productive and lawful when you are released from prison. The judge proceeded to impose the restitution order described above. This appeal followed.
 
 DISCUSSION
 
 5
 Langella argues that the district court abused its discretion by failing to consider his financial circumstances in imposing the restitution order. He calls the trial judge's reasoning "[m]ere conjecture and speculation."
 
 
 6
 We review a restitution order for abuse of discretion. United States v. Ismail, 219 F.3d 76, 78 (2d Cir.2000). In imposing a restitution order under former § 3664(a) of Title 18, a district court must consider "the financial resources of the defendant [and] the financial needs and earning ability of the defendant and his dependents." Our prior rulings have established that we will vacate an order of restitution where it appears that the district judge failed to consider these mandatory factors, if there is reason to believe that proper consideration of the factors might have led to a different restitution order. See United States v. Joyner, 201 F.3d 61, 81 (2d Cir.2000); United States v. Kinlock, 174 F.3d 297, 299-300 (2d Cir.1999).
 
 
 7
 Langella's appeal is without merit. At the sentencing hearing, his attorney described his current financial situation, and the district judge expressly referred to his prospects for future earnings and his freedom from dependents. We have no reason to doubt that the district court considered the defendant's financial circumstances; nor is there reason to believe that any further consideration would have changed the court's order.
 
 
 8
 Langella's argument that the restitution order was based on "mere conjecture and speculation" has no force. Although the governing statute requires the judge to "consider" the currently available information about the defendant's finances in setting the restitution order, it does not suggest that restitution obligations will be limited to those which the currently available information shows will be within the defendant's resources at the time the obligation arises. An order of restitution, if fashioned on a delayed schedule, will call for payment at times far in the future. The court often necessarily engages in guesswork in estimating the extent of the defendant's resources at any time in the future. See Ismail, 219 F.3d at 78 (quoting United States v. Atkinson, 788 F.2d 900, 902 (2d Cir.1986) (restitution order "may ... be based on mere probabilities, expectations, guesswork, even a `hunch'")). Furthermore, as to the risk of either underestimating or overestimating the defendant's future resources, it is altogether proper for the court to favor the victim of the defendant's crime, rather than favor the defendant. In other words, a sentencing court may properly conclude, given the uncertainty as to the defendant's future resources, that it is better to impose restitution obligations that the defendant will be unable to meet than to let the victim go uncompensated while the defendant retains newly acquired wealth.
 
 
 9
 The statute means only what it says. The court is directed to "consider" the available information relating to the defendant's resources. The court considers the information so that it can fashion a restitution schedule that will function fairly and efficiently. The statute, however, neither says, nor means, that the currently available information regarding the defendant's future resources limits the amount or schedule of restitution that may be imposed.[2]
 
 
 10
 The district court, upon consideration of the available information, formed the opinion that the defendant would "have an ability to in the future to make some contribution." The court accordingly imposed future restitution obligations. The court in no way abused its discretion in doing so.
 
 
 11
 The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Because the majority of the fraudulent conduct in this case occurred before the enactment of the Mandatory Victim Restitution Act of 1996, we analyze the appellant's claims under the law as it existed at that time. Since 1996, the imposition of restitution in certain classes of crime is no longer in the district court's discretion, but is, as the Act's title suggests, mandatory for the full amount of the victim's lossSee 18 U.S.C. § 3663A. The court, however, continues to exercise discretion under the new law over the schedule for restitution payments.
 
 
 [2]
 Although it is usually the defendant who protests the court's failure to consider the defendant's resources, the obligation to consider the defendant's resources is also for the protection of the victim. A victim, for example, should not be required to wait for restitution payments if the defendant has the resources to make the victim whole more rapidly